IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANDREW H. PEARS,                        )
Administrator for the Estate of         )
Jonathan Pears, deceased, and           )
Individually,                           )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )        CASE NO. 2:21-CV-668-WKW
                                        )                [WO]
BILL FRANKLIN, *et al.*,                )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Plaintiff Andy Pears, both individually and on behalf of his deceased son, brings this 42 U.S.C. § 1983 and § 1988 action against Defendants.   In the operative complaint, Pears alleges Defendants, all law enforcement officers, violated the United States Constitution after they were called to his house to aid in assisting his son, who was having a psychotic breakdown resulting from PTSD related to his military service in Afghanistan.   The mental-health call turned violent; Plaintiff was tackled and handcuffed, and he watched his son, who was holding a knife, being shot to death by an officer who was standing roughly ninety feet away from his son.

Defendants have moved to dismiss several claims in the complaint (and several claims that are not in the complaint but are asserted in Plaintiff's brief in opposition); however, they have not moved to dismiss the excessive-force claims

brought under the Fourth Amendment against the officer who tackled Andy, and the officer who shot and killed his son.[1]   (Docs. # 31, 33, 36, and 40.)   For the following reasons, largely due to the complaint's failure to set forth discrete, non-duplicative claims, the motions to dismiss will be granted, and most claims will be dismissed without prejudice.

## I.   JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).   The parties do not contest personal jurisdiction or venue.

## II.   STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor."   *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018) (alteration adopted).   To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   (citation omitted).   The well-pleaded factual allegations in the

---

[1]   Defendants Oliver and Boddie, respectively.

complaint, but not its legal conclusions, are presumed true.   *Id.*

### III.   BACKGROUND

The following allegations in the Amended Complaint, construed at this stage in favor of Plaintiff, are tragic.   (Doc. # 30.)

Jonathan Pears fought the Taliban in Afghanistan for this country.   After serving, he returned home to Elmore County, Alabama; but the traumas of war came with him.   He suffered terribly from PTSD and was tormented by his harrowing experiences in Afghanistan.   He moved in with his parents, Andy and Mary Pears, and he took up work as an HVAC technician.   But, after about a year stateside, he needed professional mental-health treatment for his increasingly painful depression and PTSD.

On March 29, 2021, Jonathan began an in-patient program at a Veterans Affairs Hospital.   He completed that program in late May and returned to his parents' house.   He seemingly did well for several weeks; he got a new job and was excited about life's prospects, especially for a new pick-up truck he had his eyes on. But over the months his mother, Mary, noticed that his depression was returning, and she learned that Jonathan had stopped taking his prescribed medications.

Jonathan took a turn for the worse on July 28, 2021.   While at home, he began acting irrationally and suffered a psychotic breakdown.   His parents were concerned for both his safety and their own, so Mary called 911 for help.   She told

the dispatcher that her son was acting irrationally, but that he did not have a gun (Mary had locked it in her bedroom).   The dispatcher asked Mary where her son was now, and Mary replied that he was standing next to her at the front door.   The dispatcher then told Mary that deputy sheriffs were approaching her house "through the woods."   Alarmed, Mary yelled, "Through the woods? Why are they coming through the woods? Just have them come to the front door!"

Jonathan overheard the call and said, "They're coming for me? I'm not gonna go back . . . Fine . . . let them come."   Jonathan then went to his bedroom, while his father, Andy, went outside to meet and assist the first responders.   Jonathan returned from his bedroom with a large knife and kept telling his mother, "I'm not going back! I'm not going back!"   She believed he was experiencing a flashback to fighting the Taliban.

Outside the house, Andy encountered the sheriff's department.   Upon sight, deputy Arnold Oliver instructed Andy to put his hands up—even though Andy had already put them up.   So, Andy raised them higher above his head.   Oliver then tackled Andy, handcuffed him, and threw him down the yard's steep slope.   Oliver hit him several times and left him, handcuffed, at the bottom of the slope, near the end of the driveway.

Then, Jonathan opened the front door and walked outside, holding the knife. As soon as he exited the front door, his mother heard an officer yell, "Drop the

f------ knife and get down!"    Seconds later, deputy Jacob Boddie, who was standing near a tree line roughly ninety feet away from Jonathan, shot Jonathan three times in the chest.   His mother ran outside screaming, "Did you shoot him?! Did you shoot my son? Oh my god!"    She was still on the line with the 911 dispatcher.

One of the deputies responded, "We had to shoot him, he came after your husband with a knife."    But Andy Pears says that is not true.    Instead, Andy says he was nightmarishly forced to witness an officer in SWAT gear shoot his son at long range.

The officers then breached and searched the house for firearms, finding none. All the while, Jonathan lay crumpled on the ground in the fetal position.   Mary could not initially tell if her son was breathing, but there was no attempt by any of the officers to provide him medical attention.   At some point, an officer pointed a rifle in Mary's face and told her to get back inside the house.   She complied; but after some time, she made her way back outside again.   She asked, "Is he dead? Why isn't anyone doing anything?"   She was told that an ambulance had been called.   No other action was taken to assist Jonathan while waiting for the ambulance to arrive.    During the wait, Mary saw that Jonathan's chest was heaving, and she believed her son was alive and breathing.

Sometime thereafter, Jonathan passed away,[2] and Andy Pears brought this suit alleging the use of excessive force when Andy was tackled and handcuffed, and his son was shot and killed.

## IV.   DISCUSSION

At the outset, it is important to note that neither Defendant Oliver nor Defendant Boddie has moved to dismiss the *Fourth Amendment* excessive-force claims against them—they filed partial answers to those claims.    (Doc. # 38); (Doc. # 42).    Accordingly, the Fourth Amendment claims against Boddie and Oliver will not be dismissed, and this case will not close.    Nonetheless, all Defendants have filed motions to dismiss arguing that the complaint repeatedly fails to assert particularized claims against particularized Defendants in a discernible way. Defendants are correct, and the complaint, in its current state, fails to support many of the claims pursued and theories raised in Plaintiff's responsive brief.    *Compare* Amended Complaint (Doc. # 30), *with* Brief in Opposition (Doc. # 46).    For the following reasons, all claims allegedly brought in the operative complaint will be dismissed **except** the Fourth Amendment excessive-force claims brought against Boddie (Count I) and Oliver (Count II).[3]

---

[2]   The amended complaint does not specify when exactly Jonathan died, or if Jonathan died from the gunshots; however, for purposes of this opinion, it is assumed that Jonathan died shortly after being shot and because of being shot.

[3]   As explained throughout this opinion, and summarized in the conclusion, most of these claims will be dismissed without prejudice; however, the excessive-force claims brought under the

A.   **Eller, Hooks, and Smith's Motion to Dismiss (Doc. # 33)**

Defendants Eller, Hooks, and Smith move to dismiss on the ground that Pears's amended complaint simply does not bring an action against them.   They are correct.

The amended complaint unambiguously alleges three counts: (I) "Excessive Force . . . against deputy *Jacob Boddie*," (II) "Excessive Force . . . against deputy *Arnold Oliver*," and (III) "Excessive Force . . . against the Sheriff *Bill Franklin*." (Doc. # 30 at 17–21.)   None of these counts explicitly, specifically, or particularly brings a claim against Eller, Hooks, or Smith.   In fact, the only mention of Eller, Hooks, or Smith is in Count III—which alleges that, "[t]he additional deputies . . . all contributed directly or indirectly to the death and injuries of the son and father Pears, by their presence, encouragement, and provision of security." (Doc. # 30 at 22.)

Ignoring the fact that this one sentence factual allegation is in a count brought specifically against a different Defendant, a claim nonetheless fails to lie on these allegations because the court cannot discern—from the face of the complaint—what cause of action Pears is attempting to bring against the additional deputies.   That is, it is unclear what claim Plaintiff asserts by stating that the additional deputies'

---

Fourteenth Amendment will be dismissed with prejudice because (1) they are duplicative of the Fourth Amendment excessive-force claims and (2) the Fourth Amendment is the appropriate vehicle for such a claim.

"presence" indirectly caused Pears's death.   Pears's response to Defendants'
motion to dismiss appears to indicate that he intended to assert claims for failure to
intervene or for deliberate indifference to medical needs, *see generally* (Doc. # 46 at
15), but those theories are not in the complaint as it stands.   And a complaint "may
not be amended" through responsive briefing.   *Fleming v. Dowdell*, 434 F. Supp.
2d 1138, 1148 n.9 (M.D. Ala. 2005), *aff'd*, 182 F. App'x 946 (11th Cir. 2006); *Huls
v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (finding that a claim is not
properly raised where asserted for the first time in response to a motion to dismiss);
*see Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)
(holding that a "plaintiff may not amend [his] complaint through argument in a brief
opposing summary judgment").   Indeed, neither failure to intervene nor serious
medical needs language is used in Count III, let alone is that language used as to
Eller, Hooks, or Smith.

Accordingly, Eller, Hooks, and Smith's motion to dismiss will be granted.
All claims asserted against them (to the extent that the amended complaint contains
any such claims) will be dismissed without prejudice.

**B.   Oliver's Motion to Dismiss (Doc. # 40)**

Defendant Oliver filed an answer to Pears's Fourth Amendment
excessive-force claim (Doc. # 42) and moved to dismiss Pears's Fourteenth
Amendment excessive-force claim against Oliver.   (Doc. # 40.)   Pears's briefing

"agree[s]" that the "Fourteenth Amendment [claim] may be dismissed at this time." (Doc. # 46 at 26.)   Accordingly, any excessive-force claim brought under the Fourteenth Amendment against Oliver in Count II will be dismissed with prejudice. The Fourth Amendment excessive-force claim, however, is not dismissed.

## C.   <u>Boddie's Motion to Dismiss (Doc. # 31)</u>

Defendant Boddie moves to dismiss (1) any Fourteenth Amendment excessive-force claims brought against him in Count I and (2) any claims brought against him in Count III.   (Doc. # 32 at 6.)

To begin, any claim brought in Count I—other than the excessive-force claim under the Fourth Amendment—will be dismissed.   Count I is titled: "Excessive Force Under 42 U.S.C. § 1983 against deputy Jacob Boddie in his individual capacity for wrongfully causing the death of Jonathan Pears."   (Doc. # 30 at 17.) Pears goes on to state that this claim is brought under both the Fourth and Fourteenth Amendments, and his briefing argues that the Fourteenth Amendment is appropriate because Jonathan Pears was a "pre-trial detainee" when Boddie was "deliberately indifferent" to Jonathan's serious medical needs immediately after Boddie shot him and did not render aid.   (Doc. # 46 at 20 (discussing the elements of deliberate indifference).)

To the extent that Pears argues that Count I contains a deliberate indifference to serious medical needs claim, that claim is due to be dismissed without prejudice.

Count I does not assert such a claim; rather, it asserts an excessive-force claim.    *See* (Doc. # 30 at 19) (alleging an excessive-force claim without mentioning deliberate indifference or medical needs); *but see* Brief in Opposition (Doc. # 46 at 19) (arguing a Fourteenth Amendment deliberate indifference to medical needs claim).)

Additionally, to the extent that Pears asserts an excessive-force claim under the Fourteenth Amendment in Count I, that claim is due to be dismissed with prejudice because clearly established law provides that the use of deadly, excessive force during a seizure "should be analyzed under the Fourth Amendment . . . rather than [the Fourteenth Amendment];" and Pears has brought that Fourth Amendment claim.    *Graham v. Connor*, 490 U.S. 387, 395 (1989).

Finally, to the extent that Pears argues that Count III asserts claims against Boddie, (*see* Doc. # 30 at 21), any such claim will be dismissed without prejudice for the reasons outlined above in Section IV.A (explaining that the plain language of Count III brings claims solely against Defendant Franklin and that any other claims in Count III asserted by Plaintiff's briefing are not clear from the face of the complaint).

Accordingly, all claims brought against Boddie in the amended complaint, except the excessive-force claim brought under the Fourth Amendment in Count I,[4]

---

[4]   To the extent that Plaintiff is concerned that he has not brought a wrongful death claim against Defendant Boddie in Count I (and is attempting to assert such a claim under Count III), such concern is unnecessary.   Plaintiff has alleged, under 42 U.S.C. § 1983 and 42 U.S.C. § 1988,

will be dismissed; the Fourteenth Amendment excessive-force claim will be dismissed with prejudice, the others without.

## D.   <u>Franklin's Motion to Dismiss (Doc. # 36)</u>

In Count III, Pears's amended complaint asserts a Section 1983 claim against Defendant Franklin "pursuant to *Monell* . . . and its progeny, because the Sheriff's policies, customs and practices constituted a deliberate indifference to the constitutional rights of Jonathan Pears and Andy Pears that was the moving force behind Jacob Boddie's and Arnold Oliver III's unconstitutional and excessive use of force and deadly force."   (Doc. # 30 at 21–22.)   Franklin argues that this claim should be dismissed because *Monell* claims cannot be asserted against a Sheriff in his individual capacity.    In response, Pears argues that Count III does not contain a *Monell* claim and that it was "the Sheriff's policies, customs, and practices," not that of the municipality or state's policies, that "constituted a deliberate indifference." (Doc. # 46 at 27.)   But, Pears's argument runs contrary to the plain language of the amended complaint, which states in no uncertain terms:   "These claims against Sheriff Bill Franklin are *not* brought pursuant to the doctrine of respondent superior,

---

which incorporates Alabama's wrongful death statute, Ala. Code § 6-5-410, a "Fourth Amendment violation by Deputy Boddie's use of excessive force causing the death of Jonathan Pears."   (Doc. # 46 at 22.)   Defendants do not move to dismiss this claim or evade potential damages if a wrongful-death, excessive-force claim is proven.  (Doc. # 47 at 12.)   Rather, Defendants assert that any such claim brought in Count III is duplicative of Count I, and they are right.  (Doc. # 47 at 12) ("[T]he § 1983 claim in Count III is another, duplicative federal claim for wrongful death based on a constitutional violation asserted through § 1988(a), that incorporates the damages allowed by Alabama's wrongful death statute.").

but pursuant to *Monell . . . .*"   (Doc. # 30 at 21–22 (emphasis added).)   Accordingly, given that Plaintiff's complaint and briefing contradict each other as to what exactly is the nature of the claim against Franklin in Count III, Franklin's motion to dismiss will be granted, and Count III will be dismissed without prejudice for failing to state a claim.[5]

## V.   CONCLUSION

Accordingly, it is ORDERED that Defendant Matthew Eller, Demetrius Hooks, and Tyler Smith's joint motion to dismiss (Doc. # 33) is GRANTED; that Defendant Arnold Oliver's motion to dismiss (Doc. # 40) is GRANTED; that Defendant Jacob Boddie's motion to dismiss (Doc. # 31) is GRANTED; and that Defendant Bill Franklin's motion to dismiss (Doc. # 36) is GRANTED.   It is further ORDERED that all Fourteenth Amendment excessive-force claims brought in Count I and II are DISMISSED with prejudice; that all claims brought against Defendants Matthew Eller, Demetrius Hooks, and Tyler Smith are DISMISSED without prejudice; and that all claims brought in Count III are DISMISSED without prejudice.     Plaintiff's Fourth Amendment excessive-force claims against

---

[5]   Alternatively, Count III is also due to be dismissed without prejudice because Plaintiff's briefing makes clear that Count III constitutes an impermissible shotgun pleading that apparently contains claims against four defendants, based on at least four different legal theories, that are rooted in both state and federal law, despite being denominated as one claim against one defendant. *See Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1323 (11th Cir. 2015) (discussing one type of shotgun pleading "that commits the sin of not separating into a different count each cause of action or claim for relief.").

Defendants Jacob Boddie (Count I) and Arnold Oliver III (Count II) are not dismissed.

This case is not closed.

DONE this 9th day of January, 2023.

_____
/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE